Filed 6/18/13  P. v. Thompson

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056720 |
| v. | (Super.Ct.No. FSB1105360) |
| CHRISTOPHER MICHAEL THOMPSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Renée Paradis, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

## INTRODUCTION

On April 12, 2012, a first amended information charged defendant and appellant Christopher Michael Thompson with evading an officer with willful disregard for safety, in violation of Vehicle Code section 2800.2, subdivision (a) (count 1), and driving in a direction opposite lawful traffic during flight from a pursuing officer, in violation of Vehicle Code section 2800.4 (count 2). The information also alleged that defendant had a prior serious or violent felony conviction. (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i).)

Jury trial commenced on May 7, 2012, and concluded on May 17. The jury found defendant guilty on count 1, but was unable to reach a verdict on count 2. Therefore, a mistrial was declared as to count 2. Defendant waived a jury trial on his prior conviction. On May 18, 2012, the trial court found the strike allegation true.

On June 18, 2012, the trial court sentenced defendant to the upper term of three years, doubled for his prior strike, for a total term of six years in state prison. The trial court awarded defendant 206 actual days of credit and 206 conduct days, for a total of 412 days of credit. Defendant filed his timely notice of appeal on July 17, 2012.

## STATEMENT OF FACTS

*I. Prosecution Case*

Pamela Clark-Holmes is a deputy probation officer in Orange County. She supervised defendant on probation starting in November 2010. On November 9, 2011, defendant was scheduled to report to her office, but did not. She spoke with defendant on

the telephone and told him that if he failed to report on November 14, she would file a probation violation report. Defendant failed to report on the 14th.

Shaun Sandoval is a San Bernardino police officer. On November 26, 2011, he was on patrol in the northeast district of San Bernardino. He was driving on northbound Highway 215, responding to a call. While driving on the freeway, he saw a gray four-door Cadillac in the middle northbound lane rapidly passing other cars. Officer Sandoval later identified the driver of the Cadillac as defendant. The officer sped up to match the speed of the Cadillac. The officer paced the Cadillac's speed at 80 miles per hour. The speed limit was 55 miles per hour. Because Officer Sandoval was en route to another call, he originally wanted to warn defendant to slow down and drive more safely, not necessarily stop him.

All traffic on the freeway slowed to around five to 10 miles per hour under the Baseline overpass because of construction. Officer Sandoval used his spotlight to light up defendant's side mirror on the Cadillac as they passed through the tunnel under the overpass. The officer stated over his patrol car's loudspeaker, "'Driver of the Cadillac, slow down and drive safely.'" He saw defendant look in his rearview mirror. After leaving the construction zone area, the Cadillac again accelerated, reaching a speed over the posted limit. At that point, the officer decided to stop the Cadillac. He activated all of his vehicle's emergency lights and sirens. At that point, the patrol car and the Cadillac were traveling at speeds over 80 miles per hour. They merged onto Highway 259 north, and then travelled east on Highway 210. As the two vehicles drove eastbound on Highway 210, between the Valencia and Del Rosa exits, Officer Sandoval saw defendant

3

lift both of his hands up, then bring them both down, with the left hand going outside the window and making what he described as "an 'OK' thumbs up and pointing gesture in the direction" the two cars were traveling. Officer Sandoval saw defendant make the same gesture approximately four or five times. Defendant, however, did not pull over. The officer notified his dispatch that he had a vehicle failing to yield.

Defendant exited the freeway at Highland Avenue, and Officer Sandoval followed. Defendant made an illegal turn onto Highland Avenue eastbound and continued on Highland Avenue at 80 miles per hour. Defendant then turned south on Robinson Road and turned left again onto Case Street. Defendant drove the Cadillac through a stop sign at the intersection of Case Street and Victoria Avenue as it turned right onto Victoria Avenue. In making the turn, defendant was driving fast and crossed over the double yellow lines on Victoria Avenue for about 100 feet before correcting. Defendant continued south on Victoria Avenue, driving over 90 miles per hour, making a left turn eastbound onto 14th Street through a red light.

Defendant continued to speed through a residential neighborhood disobeying many traffic laws. At one point, defendant again crossed double yellow lines for approximately 100 feet. Eventually, Officer Sandoval performed a "'legal intervention,'" a maneuver used by the police department where they use a patrol vehicle to force a fleeing vehicle to stop. Once the patrol vehicle made contact with the Cadillac, the Cadillac veered left into a driveway of a residence and stopped. The passenger in the Cadillac, Tanya Cruz, resided at this residence with her parents.

4

Officer Erick Martin was the first officer to arrive to assist Officer Sandoval. Officer Sandoval ordered the occupants of the car to put their hands up. Both defendant and his passenger complied. Individuals who were in the residence at the time exited the home, and were standing in the yard.

*II.  Defense Case*

Defendant was living with his mother, Jennie Saiz, for the past year. Saiz observed defendant suffer from seizures on multiple occasions, at least seven times. During those seizures, he would stumble, fall, and lose control of his bowels. He was also unable to think or focus and was often confused. He took antiseizure medication while living with her. She testified that defendant's seizures began when he was about eight or nine years old.

Gail Cook, defendant's passenger's mother, lived at the residence where defendant stopped his vehicle and was arrested on November 26, 2011. She recalled that the Cadillac and the police vehicle arrived at her residence around 3:30 or 4:30 in the afternoon. Cook testified that she saw the officers arrest defendant and put him into a patrol car. She said that defendant was then taken out of the patrol car and placed face down on the pavement. She testified that it looked like defendant was having a seizure because he was "twitching" and moving. There were three officers standing near defendant. Cook asked one of the officers whether defendant was having a seizure and if anything was being done for defendant, but the officer did not acknowledge her. Defendant was eventually transported by ambulance to a hospital.

5

Tanya Cruz testified that on the night of the chase, she and defendant were returning to her home from a friend's house in Colton. She testified that she did not notice the police car behind them until they were at the Highland Avenue freeway exit. Cruz testified that she first noticed defendant's behavior was abnormal while he was driving on the freeway. She said he was incoherent, flushed, and nonresponsive, and Cruz told him to slow down. When the police officers were questioning Cruz, she told them that she was scared because of the way defendant was driving.

Christopher Sangdahl is a staff psychiatrist for Riverside County. He testified as an expert witness regarding seizure disorders. He stated that he had reviewed defendant's medical records and criminal history, and that he had also interviewed defendant. He testified that defendant could have been suffering from a partial complex seizure, in which the sufferer suddenly goes blank. He stated that this can affect the brain more generally and involve more physical symptoms. Dr. Sangdahl explained that during a partial complex seizure, an individual could still be able to drive a car because driving is an automated behavior that can continue during a seizure. A partial complex seizure could last as long as seven minutes, although that would be an uncommon length.

Dr. Sangdahl also testified that he had reviewed the levels of antiseizure medication in defendant's blood after defendant was arrested and treated. Dr. Sangdahl described the levels as "sub-therapeutic," which increased the risk of having a seizure. In his opinion, someone suffering from a partial complex seizure might seem to be in a "trance-like" state.

6

On cross-examination, the prosecutor played for Dr. Sangdahl a recorded jailhouse telephone conversation between defendant and Cruz, where they were discussing the chase. Defendant stated that he "should have just stopped," and recollected that the officer had said, "don't crash." Although they had told the police officers they had not heard the officers, defendant admitted he had in fact heard them. Defendant additionally stated, "I'm going to beat those charges baby," and "[w]e going to use it, I was about to have a seizure, so." Dr. Sangdahl testified that the conversation was evidence suggesting malingering, and that the conversation would cause him to reevaluate his opinion.

## ANALYSIS

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. On March 17, 2013, defendant submitted a four-page handwritten brief. In his supplemental brief, defendant raises numerous points. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error.

First, defendant argues that he was not arraigned in a timely manner because the minute order shows "Christopher Lamone Thompson," not "Christopher Michael Thompson" being arraigned. Although the minute orders indicate an incorrect middle

7

name on several occasions, they all reference the proper first and last names, and the correct case number. There is nothing to indicate that a different defendant was participating in these proceedings.

Second, defendant appears to argue that the information[1] is defective because it indicates that defendant "has been convicted of a crime with a Penal Code section 186.11 enhancement," when he was convicted in Orange County of violating Penal Code section 459. This is not contradictory. The information indicates that defendant had previously been convicted of a violating Penal Code section 459 with a Penal Code section 186.11 enhancement.

Third, defendant argues that a felony guilty plea form indicates that he was to receive the "mid term low term max term 2-4-6 from County of Orange" but he received the "upper term of 3 yrs as of count 1." The guilty plea form, however, is from his previous felony conviction in Orange County. Hence, it is inapplicable to this appeal.

In the same argument, defendant indicates that he "should be entitled to 1/2 credit that fall under 4019 as for count 2 dismiss." It is quite difficult to decipher defendant's argument. However, we note that count 2 was declared a mistrial in this case, and defendant was not sentenced whatsoever regarding count 2. Also, the trial court awarded defendant both 206 actual and 206 conduct credits under Penal Code section 4019.

---

[1] Defendant references the information and not the first amended information. This, however, is inconsequential as the portion of the information referenced is the same in both the information and first amended information.

Fourth, defendant references the reporter's transcript wherein the deputy district attorney is cross-examining Dr. Sangdahl. It appears that defendant is claiming error because "the court did not let the jury hear that motion." After reading the transcript referenced by defendant, there is nothing to indicate error. The prosecutor was simply asking defendant's expert witness questions regarding some medical reports. The prosecutor indicated that they were running out of time and that he would "save this for the next time I see you."

Fifth, defendant argues that Dr. Fenati showed bias and references the reporter's transcript. We note that Dr. Fenati did not testify. The doctor, apparently, prepared a report wherein he indicated that defendant had essentially faked a seizure. The prosecutor was simply questioning defendant's own expert witness, Dr. Sangdahl, about his opinion regarding Dr. Fenati's report. Again, defendant's argument is not only incoherent, it is inapplicable to this appeal.

Sixth, defendant mentions that an officer "did not make a report at [scene] of crime." There is nothing to indicate how this assists defendant in his appeal.

Lastly, defendant argues that his trial counsel rendered ineffective assistance of counsel (IAC). In order to establish a claim of IAC, defendant must demonstrate, "(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in

9

the outcome. [Citations.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541, citing, among other cases, *Strickland v. Washington* (1984) 466 U.S. 668; accord, *People v. Boyette* (2002) 29 Cal.4th 381, 430.) Hence, an IAC claim has two components: deficient performance and prejudice. (*Strickland v. Washington*, *supra*, at pp. 687-688, 693-694; *People v. Williams* (1997) 16 Cal.4th 153, 214-215; *People v. Davis* (1995) 10 Cal.4th 463, 503; *People v. Ledesma* (1987) 43 Cal.3d 171, 217.) If a defendant fails to establish either component, the claim fails.

When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. (*People v. Pope* (1979) 23 Cal.3d 412, 426.)

Here, defendant claims that his counsel was ineffective because defendant was never given the opportunity to consider a plea agreement that was offered to him. However, a careful review of the reporter's transcript on April 13, 2012, indicates that, although defendant was present at the proceeding, he never informed the trial court that he was unaware of an offer. Instead, when defense counsel stated: "Your Honor, there has been an offer conveyed to [defendant]. He's rejecting that offer. It's 32 months," defendant did not indicate that he in fact did NOT know about the offer or reject the offer. Instead, defendant did not state anything, indicating he approved with his counsel. It also appears that defendant is arguing that defense counsel rendered IAC during trial because he was suffering from partial seizures and his attorney ignored the seizures.

10

After reviewing the trial transcript, we note that defendant's counsel actively engaged in examining and cross-examining the witnesses and advocated for defendant.

Based on the above, we find that defense counsel did not render assistance below an objective standard of reasonableness under prevailing professional norms.

We have conducted an independent review of the record and find no arguable issues.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

11